**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)**

| | |
|---|---|
| OPPOBOX, LLC, UNIVERA NETWORK, LLC, ROYA HOSTING, LLC, VIRTUZO, LLC, CONTINA COMMUNICATIONS, LLC, FIBER GALAXY, LLC, TELENTIA, LLC, BORDER TECHNOLOGY, LLC and FAIRWAY NETWORK, INC.<br><br>　　　　　　Plaintiffs,<br><br>　vs.<br><br>AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD.<br><br>　　　　　　Defendant. | Civil Action No.<br><br>**VERIFIED COMPLAINT**<br><br>Jury Trial Requested |

Plaintiffs OppoBox, LLC ("OppoBox"), Univera Network, LLC ("Univera Network"), Roya Hosting, LLC ("Roya Hosting"), Virtuzo, LLC ("Virtuzo"), Contina Communications, LLC ("Contina"), Fiber Galaxy, LLC ("Fiber Galaxy"), Telentia, LLC ("Telentia"), Border Technology, LLC ("Border Technology") and Fairway Network, Inc. ("Fairway Network) (collectively, "Plaintiffs" or "Channel Partners"), by and through their undersigned counsel, file this Complaint against Defendant American Registry for Internet Numbers, Ltd. ("ARIN" or "Defendant") and allege as follows:

**PARTIES, JURISDICTION, & VENUE**

1. OppoBox is a limited liability company organized under the laws of the State of Delaware. OppoBox is a related corporate entity of Micfo, LLC ("Micfo"), which is an infrastructure as a service (IaaS) provider.

2. Univera Network is a limited liability company organized under the laws of the State of Wyoming. Univera Network is a related corporate entity of Micfo.

3. Roya Hosting is a limited liability company organized under the laws of the State of Colorado. Roya Hosting is a related corporate entity of Micfo.

4. Virtuzo is a limited liability company organized under the laws of the State of Delaware. Virtuzo is a related corporate entity of Micfo.

5. Contina is a limited liability company organized under the laws of the State of Delaware. Contina is a related corporate entity of Micfo.

6. Fiber Galaxy is a limited liability company organized under the laws of the State of Delaware. Fiber Galaxy is a related corporate entity of Micfo.

7. Telentia is a limited liability company organized under the laws of the State of Delaware. Telentia is a related corporate entity of Micfo.

8. Border Technology is a limited liability company organized under the laws of the State of New Mexico. Border Technology is a related corporate entity of Micfo.

9. Fairway Network is a corporation organized under the laws of the State of New York. Fairway Network is a related corporate entity of Micfo.

10. ARIN is a non-profit, member-based corporation organized under the laws of the Commonwealth of Virginia. ARIN is the regional internet registry (RIR) that holds market control to manage and distribute Internet number resources for Canada, the United States, and many Caribbean and North Atlantic islands. ARIN is headquartered in Chantilly, Virginia.

11. Jurisdiction is proper under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendant, and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

12. This Court has personal jurisdiction over Defendant because Defendant is a resident of the Commonwealth of Virginia.

13. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(a) and (c), Local Civil Rule 3(C) and Section 14(k)(ii) of the Channel Partners RSAs (defined herein), which provides: "[E]ither party may bring an action before the United States District Court for the Eastern District of Virginia or the Circuit Court for Fairfax County, Virginia for a temporary restraining order, preliminary injunction and/or other injunctive relief to seek to maintain the status quo between the parties pending resolution of the dispute(s) in accordance with the terms of this Paragraph."

## FACTS

14. Founded in 1999, Micfo, the parent entity of the Channel Partners, is a leading IaaS provider operating one of the largest networks of globally dispersed cloud platforms for fog and edge applications.

15. Fog and edge computing refers to cloud hosted manufacturing and automation applications and networks in the Internet of Things (IoT) that collect, analyze, and process data from these internet-enabled assets more efficiently than traditional cloud architecture. Micfo is constantly striving to achieve key competitive advantages and market differentiation through intelligent expansion of its technologically superior IaaS platforms and services through the Channel Partners.

16. The Channel Partners obtain the rights to Internet number resources, including Internet Protocol address space ("IP Address Space") and Autonomous System Numbers ("ASNs" and collectively with IP Address Space, "Internet Number Resources") from ARIN.

17. On or about January 23, 2014, OppoBox entered into a Registration Services Agreement ("RSA") with ARIN ("OppoBox RSA"). The OppoBox RSA is attached hereto as **Exhibit A**.

18. On or about October 23, 2014, Univera Network entered into an RSA with ARIN ("Univera RSA"). The Univera RSA is attached hereto as **Exhibit B**.

19. On or about June 30, 2014, Roya Hosting entered into an RSA with ARIN ("Roya Hosting RSA"). The Roya Hosting RSA is attached hereto as **Exhibit C**.

20. On or about March 20, 2014, Virtuzo entered into an RSA with ARIN ("Virtuzo RSA"). The Virtuzo RSA is attached hereto as **Exhibit D**.

21. On or about December 27, 2013, Contina entered into an RSA with ARIN ("Contina RSA"). The Contina RSA is attached hereto as **Exhibit E.**

22. On or about May 26, 2015, Fiber Galaxy entered into an RSA with ARIN ("Fiber Galaxy RSA"). The Fiber Galaxy RSA is attached hereto as **Exhibit F**.

23. On or about January 21, 2014, Telentia entered into an RSA with ARIN ("Telentia RSA"). The Telentia RSA is attached hereto as **Exhibit G**.

24. On or about December 29, 2014, Border Technology entered into an RSA with ARIN ("Border Technology RSA"). The Border Technology RSA is attached hereto as **Exhibit H**.

25. On or about June 21, 2015, Fairway Network entered into an RSA with ARIN ("Fairway Network RSA"). The Fairway Network RSA is attached hereto as **Exhibit I**.

26. The OppoBox RSA, Univera RSA, Roya Hosting RSA, Virtuzo RSA, Contina RSA, Fiber Galaxy RSA, Telentia RSA, Border Technology RSA and Fairway Network RSA are collectively referred to herein as the "Channel Partners' RSAs."

27. The Channel Partners' RSAs are contracts of adhesion prepared by ARIN that it enters into with its members, and thus, with the exception of the names of the holders, the terms and conditions of the Channel Partners' RSAs are the same.

28. Pursuant to the Channel Partners' RSAs, ARIN grants the following rights to each Channel Partner: (i) the exclusive right to be the registrant of certain Internet Number Resources; (ii) the right to use those Internet Number Resources within the ARIN database; and (iii) the right to transfer the registration of those Internet Number Resources. *See* Channel Partners' RSAs, Exhibits A-I, § 2(b).

29. Pursuant to Section 13(a) of the Channel Partners' RSAs, the Channels Partners' RSAs renew automatically unless terminated in accordance with the termination provisions of the RSAs or if a Channel Partner gives written notice to ARIN of its desire not to renew the Agreement. *See* Channel Partners' RSAs, Exhibits A-I, § 13(a). No such events have occurred, and the Channel Partners' RSAs have continued to automatically renew since their commencements.

30. On or about October 19, 2018, Micfo placed three inter-regional transfer requests of IP addresses owned by Micfo and its related corporate entities, OppoBox and Telentia, pursuant to Section 8.4 of the ARIN Number Resource Policy Manual ("Policy Manual"). The Policy Manual is attached hereto as **Exhibit J**.

31. On or about October 30, 2018, ARIN, via electronic communication, informed Micfo, OppoBox and Telentia that the "transfer request was placed on hold. ARIN is conducting a 'Number Resources Policy Manual' section 12.2.b. Resource Review of your organization. We will be in further contact for information and documentation for this review."

32. On or about November 13, 2018, Micfo and the Channel Partners, through its representatives,[1] sent a letter to ARIN ("November 13 Channel Partners' Letter") stating "[p]lease feel free to reach out to me with any requests for 'reasonable related documentation', as Micfo is

---

[1] Communications between Micfo, the Channel Partners and ARIN have occurred through their respective counsel.

happy to assist ARIN with its review." The November 13 Channel Partners' Letter is attached hereto as **Exhibit K**.

33. That same day, ARIN sent an email to certain of the Channel Partners broadly requesting proof of identity of a number of different individuals and, for each Channel Partner, corporate documents from March 17, 2015 to present which confirm the ongoing operations of Micfo and the Channel Partners, including, tax filings, vendor contracts (connectivity agreements, colocation agreements, monthly invoices), asset inventory, customers lists, and payroll information ("November 13 ARIN Request"). The November 13 ARIN Request is attached hereto as **Exhibit L**.

34. On or about November 21, 2018, Micfo and the Channel Partners sent a letter to ARIN ("November 21 Channel Partners' Letter") pointing out that the November 13 ARIN Request broadly seeks Micfo and the Channel Partners to produce trade secrets and highly sensitive business and personnel information for more than a three year period for all of its customers, and that compliance with this request would involve thousands of pages of documents and sensitive human resources information. Micfo and its Channel Partners pointed out that, pursuant to Section 12.1 of the Policy Manual, ARIN is allowed to request only *reasonable* documentation, and in order to evaluate and assemble *reasonable* documentation related to ARIN's review, Micfo and the Channel Partners necessarily requested to know the purpose of ARIN's request. The November 21 Channel Partners' Letter is attached hereto as **Exhibit M**.

35. Without ever responding to the November 21 Channel Partners' Letter requesting clarification of what *reasonable* related documentation ARIN was requesting, on December 6, 2018, ARIN sent Micfo and the Channel Partners a letter ("December 6 ARIN Letter") demanding that "Micfo, its CEO, Mr. Amir Golestan, and any affiliated 'alias' individuals and companies

6

agree to a revocation of all IP number resources in Attachment A[2] that have not yet been transferred to other entities." The December 6 ARIN Letter is attached hereto as **Exhibit N**.

36. In the December 6 ARIN Letter, ARIN claims that Micfo and the Channel Partners *likely* violated 18 U.S. Code § 1341 and/or § 1343 by intentionally defrauding ARIN (emphasis added). ARIN also claims that Micfo and the Channel Partners breached Section 2(c) and 2(d) of the Channel Partners' RSAs.

37. Specifically, Section 2(d) of the Channel Partners' RSAs provides:

Prohibited Conduct by Holder. In using any of the Services, Holder shall not: (i) disrupt or interfere with the security or use of any of the Services; (ii) violate any applicable laws, statutes, rules, or regulations; or (iii) assist any third party in engaging in any activity prohibited by any Service Terms.

Channel Partners' RSAs, Exhibits A-I, § 2(d).

38. Section 2(c) of the Channel Partners' RSAs provides:

Information and Cooperation. Holder has completed an application provided by ARIN for one or more Services (the "Application"). Holder must (i) promptly notify ARIN if any information provided in the Application changes during the term of this Agreement, and (ii) promptly, accurately, and completely respond to any inquiry made to Holder by ARIN during the term of this Agreement. In addition, Holder shall promptly provide ARIN with complete and accurate information, and cooperation as required by any Service Terms or that ARIN requests in connection with ARIN's provision of any of the Services to Holder. If Holder does not provide ARIN with such information or cooperation that ARIN requests, ARIN may take such failure into account in evaluating Holder's subsequent requests for transfer, allocation or assignment of additional number resources, or requests for changes to any Services.

Channel Partners' RSAs, Exhibits A-I, § 2(c).

39. While ARIN states in the December 6 ARIN Letter that Micfo and the Channel Partners failed to submit any facts or documents that might be relevant pursuant to the November

---

[2] The IP/Internet number resources in Attachment A referenced in the December 6 ARIN Letter are referred to herein as "Certain Internet Number Resources."

7

13 ARIN Request, they also "*note that [Micfo and Channel Partners] do not have to provide any documents to ARIN at this point*." (emphasis added)

40. In the December 6 ARIN Letter, ARIN goes on to threaten the Channel Partners stating, "However, we want to make clear that if your client does not voluntarily agree by Friday, December 14, 2018, to a revocation of all the Internet number resources listed in Attachment A, ARIN will likely revoke these resources and take other appropriate actions."

41. ARIN eventually agreed that Mr. Golestan, as owner and Chief Executive Officer of Micfo and sole manager of the Channel Partners, could provide detailed statements to ARIN by December 19, 2018 that addressed the issues raised by ARIN. Mr. Golestan provided these statements timely on December 19, 2018 under Federal Rule of Evidence 408.

42. After providing these statements to ARIN, Micfo and the Channel Partners requested assurance from ARIN on December 20, 2018 that it would not revoke Certain Internet Number Resources. ARIN refused to provide this assurance.

43. Upon information and belief, ARIN's threat to immediately and unilaterally revoke the Internet Number Resources listed in Attachment A to the December 6 ARIN Letter, referred to herein as "Certain Internet Number Resources," would be done pursuant to Section 13(b) of the Channel Partners' RSAs, which states in pertinent part: "ARIN shall have the right to stop Services pursuant to any breach of Sections 2(c), 2(e), 4 or 7. In addition, ARIN may exercise its judgment to immediately stop Services upon written notice to Holder if Holder breaches Sections 2(c), 2(d) 7 or 11." Channel Partners' RSAs, Exhibits A-I, § 13(b).

44. As the Channel Partners have not committed any material breaches of the above-mentioned provisions, there is no basis for ARIN's revocation of Certain Internet Number

Resources. Should ARIN decide to immediately and unilaterally revoke Certain Internet Number Resources, ARIN would instead be in breach of the Channel Partners' RSAs.

45. Based upon the representations made in the December 6 ARIN Letter and continued representations by ARIN, the Channel Partners believe that ARIN will immediately and unilaterally revoke all of the Certain Internet Number Resources contained in Attachment A to the December 6 ARIN Letter, resulting in a breach of the Channel Partners' RSAs.

46. Further, Section 13(b) of the Channel Partners' RSAs provides that the Channel Partners may utilize arbitration to dispute any ARIN termination or suspension of service. Channel Partners' RSAs, Exhibits A-I, § 13(b).

## COUNT I
### (Anticipatory Breach of Contract)

47. The Channel Partners repeat and reallege the allegations in paragraphs 1 through 46 as if fully set forth herein.

48. The Channel Partners' RSAs constitute valid, binding and enforceable contracts between each individual Channel Partner and ARIN.

49. Under the terms of the Channel Partners' RSAs, ARIN only has the right to stop services, which include Certain Internet Number Resources, if the Channel Partner breaches Sections 2(c), 2(e), 4 or 7.

50. Similarly, under the terms of the Channel Partners' RSAs, ARIN may only exercise its judgment to immediately stop its services, which include Certain Internet Number Resources, upon written notice to the Channel Partner if the Channel Partner breaches Sections 2(c), 2(d), 7, or 11.

51. None of the Channel Partners have committed any such material breaches.

9

52. ARIN has threatened to immediately and unilaterally revoke Certain Internet Number Resources and take other appropriate actions if the Channel Partners do not voluntarily agree to revoke Certain Internet Number Resources.

53. Upon information and belief, ARIN will immediately and unilaterally revoke Certain Internet Number Resources.

54. ARIN's threatened revocation of Certain Internet Number Resources constitutes a repudiation of its contractual obligations under the Channel Partners' RSAs and is an anticipatory breach of the Channel Partners' RSAs.

55. While the scope of damages is unable to be determined at this time, the anticipatory breach of contract by ARIN will cause insurmountable damages to the Channel Partners, including, for example, competitive harm and the depletion of virtually all of their business operations.

## COUNT II
### (Injunctive Relief)

56. The Channel Partners repeat and reallege the allegations in paragraphs 1 through 55 as if fully set forth herein.

57. As alleged above, ARIN's actions constitute anticipatory breach of the Channel Partners' RSAs.

58. There is a substantial threat that the Channel Partners will suffer irreparable harm, for which there is no adequate remedy at law, if a temporary restraining order and injunction are not granted. If ARIN is allowed to revoke Certain Internet Number Resources, Channel Partners' contractual rights will be interfered with and the Channel Partners' will suffer irreparable harm in the form of lost customers, lost sales, lost market share and the loss of goodwill and reputation.

59. Because there is no adequate remedy at law available to Channel Partners, injunctive relief is required.

60. The injunctive relief will not substantially harm ARIN as it will only enjoin ARIN from impairing its obligation to perform under the Channel Partners' RSAs.

61. No other parties would be substantially harmed by the issuance of a temporary restraining order and injunction and the public interest would be best served by granting the requested injunctive relief.

62. To prevent imminent, irreparable harm to Channel Partners, ARIN must be enjoined from revoking Certain Internet Number Resources.

## COUNT III
**(Declaratory Relief)**

63. The Channel Partners repeat and reallege the allegations in paragraphs 1 through 62 as if fully set forth herein.

64. The Channel Partners have performed their obligations in accordance with the Channel Partners' RSAs.

65. The Channel Partners have complied with the terms of and have not breached the Channel Partners' RSAs.

66. ARIN has represented to the Channel Partners that it will immediately and unilaterally revoke Certain Internet Number Resources based on an alleged breach of the Channel Partners' RSAs. The existence of said alleged breach is denied by the Channel Partners.

67. Such action by ARIN constitutes a breach of the Channel Partners' RSAs.

68. Declaratory relief deeming the Channel Partners to be in compliance with the Channel Partners' RSAs and ARIN to be in breach of the same agreements, is necessary to prevent the likely irreparable harm to the Channel Partners from ARIN's revocation.

69. Because the Channel Partners have performed fully under the Channel Partners' RSAs and ARIN has breached the same agreements, the Certain Internet Number Resources should be affirmed for use by the Channel Partners pursuant to the Channel Partners' RSAs.

**WHEREFORE**, Plaintiffs pray for judgment in their favor and against Defendant providing the following relief:

(1) Granting a temporary restraining order prohibiting ARIN from revoking Certain Internet Number Resources;

(2) Granting a preliminary injunction order prohibiting ARIN from revoking Certain Internet Number Resources;

(3) Granting a permanent injunction order prohibiting ARIN from revoking Certain Internet Number Resources;

(4) Declaring Channel Partners to be in compliance with the Channel Partners' RSAs;

(5) Declaring ARIN to be in breach of the Channel Partners' RSAs;

(6) Declaring the Certain Internet Number Resources to be affirmed for use by the Channel Partners pursuant to the Channel Partners' RSAs.

(7) Awarding Channel Partners damages;

(8) Awarding Channel Partners their reasonable attorneys' fees;

(9) That pre- and post-judgment interest be awarded at the highest rates allowed by law on all amounts awarded to the Channel Partners;

(10) All other relief as this Court deems just and proper.

## VERIFICATION

I, Amir Golestan, declare as follow:

1. I am the Owner and Chief Executive Officer of Micfo, LLC.

2. I am also the sole manager of Micfo, LLC's related corporate entities, known as the "Channel Partners": OppoBox, LLC, Univera Network, LLC, Roya Hosting, LLC, Virtuzo, LLC, Contina Communications, LLC, Fiber Galaxy, LLC, Telentia, LLC, Border Technology, LLC and Fairway Network, Inc.

3. I have personal knowledge of the Channel Partners and their business activities, including those set out in the foregoing *Verified Complaint*, and, if called upon to testify, I would competently testify as to the matters stated herein.

4. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint* concerning the Channel Partners are true and correct.

Executed on December 20th, 2018.

_____
Amir Golestan

Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

 */s/     Michael F. Ruggio*
Michael F. Ruggio, Esq.
(VSB No. 22953)
101 Constitution Avenue, NW
Suite 900
Washington, DC 20001
Telephone: (202) 689-2800
Facsimile: (202) 712-2860
mike.ruggio@nelsonmullins.com

*Attorneys for OppoBox, LLC, Univera Network, LLC, Roya Hosting, LLC, Virtuzo, LLC, Contina Communications, LLC, Fiber Galaxy, LLC, Telentia, LLC, Border Technology, LLC and Fairway Network, Inc.*

Of Counsel:

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Katherine A. DeStefano
101 Constitution Avenue, NW
Suite 900
Washington, DC 20001
Telephone: (202) 689-2800
katherine.destefano@nelsonmullins.com

Merritt G. Abney
John C. McElwaine
M. Kathleen McTighe Mellen
151 Meeting Street / Sixth Floor
Post Office Box 1806 (29402-1806)
Charleston, SC 29401-2239
Telephone: (843) 853-5200
merritt.abney@nelsonmullins.com
john.mcelwaine@nelsonmullins.com
katie.mellen@nelsonmullins.com

*Pro Hac Vice Motions Forthcoming*